**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
TERESA ZERILLI-EDELGLASS,

     **Plaintiff,**

                  **OPINION and ORDER**
  -against-             **CV-04-0549 (NG) (LB)**

**NEW YORK CITY TRANSIT AUTHORITY**
**and MANHATTAN AND BRONX**
**SURFACE TRANSIT OPERATING**
**AUTHORITY,**

     **Defendants.**
-----------------------------------------------------------x
**GERSHON, United States District Judge:**

   Plaintiff Teresa Zerilli-Edelglass brings this action against defendants New York City Transit

Authority ("NYCTA") and Manhattan and Bronx Surface Transit Operating Authority

("MaBSTOA") alleging: (1) retaliation based on her opposition to discriminatory practices under

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000 et seq. ("Title VII"), New

York State Executive Law, as amended, §§ 290 et seq. ("New York State Human Rights Law"), and

New York City Human Rights Law, NYC Administrative Code §§ 8-101 et seq. ("New York City

Human Rights Law") and (2) discrimination based on disability under the Americans with

Disabilities Act of 1990, 42 U.S.C. §§ 12112 et seq. ("ADA").

   Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil

Procedure. Plaintiff, in opposition to summary judgment, requests that, pursuant to Rule 56(f), the

motion be continued so that plaintiff can explore additional discovery, or, alternatively, that the

motion be denied based on the current record. For the reasons detailed below, the defendants'

motion is granted.

## I. BACKGROUND

The following facts are undisputed unless otherwise noted. Plaintiff's claims arise from her employment with NYCTA and MaBSTOA. She argues that she was denied differential pay based on her disabilities and in retaliation for her success in an earlier employment discrimination case and her opposition to unlawful employment practices. Defendants provide differential pay to certain employees who are incapacitated as a result of an accidental injury or disease arising out of and in the course of employment. It equals the difference between an employee's Worker's Compensation payment and the employee's after-tax salary.

### A. Prior Litigation

Plaintiff was a non-represented employee, meaning an employee without union representation, of defendants from 1988 to 1999. During her employment, plaintiff alleged that she was the victim of both gender discrimination and retaliatory conduct, for which she brought a successful suit against defendant NYCTA. *Zerilli v. New York City Transit Auth.*, 973 F. Supp 311 (E.D.N.Y 1997), *aff'd in part, rev'd in part, vacated in part*, 162 F.3d 1149 (2d Cir. 1998), *on remand*, No. 94-CV-5495, 1998 WL 307019 (E.D.N.Y. May 1, 1998). She was awarded damages, back pay, and a promotion to a managerial position. *Id*.

In compliance with this decision, defendants offered plaintiff a managerial position on June 20, 1997. At that point, plaintiff had been absent from work since March 8, 1997 because of her mental illness. As a result, she failed to report to her new position. Because plaintiff no longer reported to work, she was terminated from her employment on July 27, 1999. In response, plaintiff filed a wrongful termination action against the defendant NYCTA, alleging discrimination because of gender and disability, and retaliation based on her earlier lawsuit. *Zerilli-Edelglass v. New York*

*City Transit Auth.*, No. 00-CV-6393, 2001 U.S. Dist. LEXIS 25378 (E.D.N.Y. Apr. 16, 2001), *reconsideration denied,* No. 00-CV-6393, 2001 U.S. Dist. LEXIS 25377 (E.D.N.Y. May 23, 2001), *aff'd*, 333 F.3d 74 (2d Cir. 2003). This suit was dismissed for failure to file an EEOC charge within 300 days of her receipt of notice of the termination decision. *Id.*

## B. Application and Denial of Differential Pay

After she stopped working for defendants, plaintiff filed for worker's compensation and differential pay on July 11, 1997, claiming she was entitled to these benefits because of her mental illness.[1] From 1997 to 2003, the Worker's Compensation Board held hearings "once every three months or so," most of which plaintiff attended, to determine whether plaintiff's mental illness was work-related. In January 2003, plaintiff was awarded total, permanent worker's compensation, starting retroactively from 1997.

After being awarded worker's compensation, plaintiff contacted defendants and requested differential pay for the period of March 1997 to July 1999.[2] Defendants' policy on differential pay is outlined in Policy Instruction 5.3.1 and the Worker's Compensation Instruction Sheet. To be eligible for differential pay, the employee "must establish that the disability 'arose out of and occurred in the course of employment' and further, must establish compliance with the rules, regulations, and contractual requirements related to qualification for differential pay." Defendants' rules require that, when a employee sustains an injury while working, she "immediately notify" her

---

[1] It is undisputed that, because of her mental impairments, plaintiff had received long-term disability benefits under MaBSTOA's Long-Term Disability Plan from 1997-1999 and has received social security disability benefits from 1999 to the present.

[2] In order to receive differential pay, an NYCTA or MaBSTOA employee must already be receiving worker's compensation.

3

supervisor or department unit. After receiving an accident report, the employee shall "as soon as possible" complete and sign the accident report and give it to her supervisor. Late filing "may result in a DELAY in COMPENSATION PAYMENTS AND DENIAL of DIFFERENTIAL PAY." (emphasis in the original).  The supervisor shall then request that a medical examination of the employee be taken at a Medical Assessment Center ("MAC"). If unable to report to a MAC, the employee must notify the supervisor and provide medical documentation. Absent such proof, "benefits may be jeopardized."

By letter dated April 24, 2003, defendants denied plaintiff's differential pay claim on the grounds that: (1) she failed to report to the clinic as requested; (2) her illness was an aggravation of a pre-existing condition; and (3) the accident was reported late.  At her deposition, Janet Holt, the Deputy Director of Workers' Compensation Division, NYCTA, affirmed that late reporting of accidents and failure to go to a MAC often result in denials of differential pay.  She also expressed that persons with mental disorders are nonetheless required to report to a MAC and file an accident report the day they learn of their impairment.

 After receiving the April 24, 2003 letter, plaintiff filed a notice of appeal, which was forwarded to William Jefferson, a Senior Hearing Officer at defendants' Office of Labor Relations. Mr. Jefferson is responsible for conducting Step III hearings as part of the Problem Resolution Procedure for non-represented employees.  Upon receiving the notice of appeal, Mr. Jefferson sent plaintiff a letter dated May 6, 2003 informing her that a Problem Resolution Meeting had been scheduled for May 13, 2003 at defendants' offices in Brooklyn. The letter stated that, if the scheduled meeting date conflicted with plaintiff's personal schedule, she should contact Mr. Jefferson immediately so that the meeting could be rescheduled.  In his declaration, Mr. Jefferson

stated that hearings are "frequently rescheduled for the convenience of the employee." Jefferson

Decl. ¶ 11. According to Ms. Holt, no one is ever denied a hearing.

By facsimile dated May 12, plaintiff sent the following response:

I received your correspondence dated May 6, 2003 on Saturday, May 10 regarding a "Problem Resolution Meeting" on Tuesday, May 13 in Brooklyn.

I'm afraid that this is simply not doable. For one, even if it was, I was certainly not given ample notice. Beyond this, as I am no longer an employee of NYCT as well as one with a long, entangled legal history with them, a meeting conducted by its staff on its turf is a scenario far from that which I would consider to be fair and equitable– especially without having my own legal representative present. Finally, I certainly do not see this matter as one requiring such debate. I don't doubt that you have been made aware of the circumstances surrounding my "case" and as such realize that this attempt at "problem resolution" is nothing more than another ploy and/or stall tactic.

As I stated clearly to Mr. Schoolman et al, this matter is relatively cut and dry where differential pay is concerned. I am certainly entitled to the same as any other similarly situated employee (re: title/worker's compensation) regardless of the complexity and uniqueness of the matter in its entirety.

Hence, as also previously expressed, I expect to be paid immediately (based upon the correct salary) or else I will absolutely proceed to file another federal complaint. Please understand that I have been through hell and back at this point and am no longer willing to play these games with NYCT. They have tormented and tortured me for so long to such a degree that I can barely function as I know I would have been able barring this entire ordeal. I don't expect you or anyone else to truly understand but simply to do what is right and just thus allowing me to move toward a long awaited recovery process.

If there is any information you need in order to process this request, please contact me at 732-833-8538. I will respond to you in writing by fax.

Thank you for your cooperation,
Teresa A. Zerilli

Mr. Jefferson sent a response dated June 6, 2003, which stated the following:

This is in response to your letter dated May 12, 2003.

Please by advised that the policy instruction governing the Problem Resolution Procedure requires that the aggrieved party "personally appear" for the meeting. If the aggrieved individual fails to appear, the appeal is dismissed. Furthermore, the policy does not provide

for a telephone meeting.

In view of the foregoing, the above matter is considered closed.

Sincerely,
William L. Jefferson

In his declaration, Mr. Jefferson stated that he and other officers "routinely enforce the requirement that employees 'personally appear' at Problem Resolution and Step III Hearings," and that he closed plaintiff's appeal because she refused to "personally appear." Jefferson Decl. ¶¶ 13-14. He also stated that he "had never heard of either Plaintiff or her claims against the Authorities" prior to his receipt of plaintiff's appeal. Jefferson Decl. ¶ 10.

## C. Filing of EEOC charge

After she received Mr. Jefferson's June 6 letter, plaintiff filed a charge with the EEOC titled "Formal Retaliation Complaint Against New York City Transit" on June 17, 2003. She alleged that the denial of differential pay was "a retaliatory measure for my ongoing legal pursuits against NYCT as well as for my past legal victories, namely a successful federal suit (concerning discrimination, harassment and retaliation) in March 1997." Nowhere in her EEOC charge did she allege that she requested an accommodation for her disability or that she was discriminated against because of her disability. However, on June 26, 2003, the EEOC prepared its "Charge of Discrimination" and cited disability as the cause of discrimination.

By letter dated July 1, 2003, plaintiff wrote to Michael Bertty of the EEOC to clarify that her charge was based on retaliation and not disability. Plaintiff stated, "While it is true that I have suffered a vocational disability, there is nothing in this particular complaint concerning the matter at hand being one spurned by it."

Plaintiff's charge was denied by the EEOC but she was issued a right to sue letter. In preparation for filing a complaint, plaintiff contacted Ms. Yourke of the EEOC to again clarify that her charge was based on retaliation, not disability. By letter dated November 9, 2003, she wrote, "Why was my charge filed under ADA and not retaliation? I certainly did not intend for that to be the case, i.e., NYCT did not deny me differential pay because I am disabled. This *is*, as have been all other negative actions, one of retaliation..." By letter dated November 24, 2003, plaintiff again wrote Ms. Yourke, reiterating her concerns about her charge and adding, "As I previously said, this charge is the result of **retaliation** on the part of my ex-employer and **not** disability." (emphasis in the original). Ms. Yourke responded to plaintiff on December 8, 2003, clarifying that her June 17, 2003 charge was entitled a retaliation charge. After receiving this correspondence, plaintiff filed a pro se complaint with this court alleging retaliation under Title VII and failure to accommodate her disability under the ADA. Later, plaintiff retained counsel, who has filed a Second Amended Complaint.

## II. DISCUSSION

### A. Summary Judgment Standards

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view the inferences to

be drawn from the facts in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts... the non-moving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id*. at 586-87. Mere conjecture and speculation as to the true nature of the facts will not suffice to overcome a motion for summary judgment. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).

In employment discrimination actions such as this, courts must be cautious about granting summary judgment when intent is at issue. This is because "a victim of discrimination is... seldom able to prove his or her claim by direct evidence and is usually constrained to rely on the cumulative weight of circumstantial evidence." *Rosendale v. Thornburgh*, 928 F.2d 528, 533 (2d Cir. 1991). Consequently, "where a defendant's intent and state of mind are placed at issue, summary judgment is ordinarily inappropriate." *Id*. However, "[t]he summary judgment rule would be rendered sterile... if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). Therefore, summary judgment is appropriate, even in discrimination cases, where the standards of Rule 56 have been met. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

### B. Rule 56(f)

Plaintiff's central opposition to summary judgment is based upon a claimed need for additional discovery, specifically the deposition of Mr. Jefferson. Rule 56(f) states: "Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court

may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." In the Second Circuit, "a party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing '(1) what facts are sought to resist the motion and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.'" *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303 (2d Cir. 2003).

Although Rule 56(f) allows for the continuance of summary judgment motions in some circumstances, it "is not a shield against all summary judgment motions." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994). Rule 56(f) does not permit the plaintiff to engage in a fishing expedition, *Waldron v. Cities Serv. Co.*, 361 F.2d 671, 673 (2d Cir. 1966), and a court may reject a request for additional discovery under Rule 56(f) if it deems the request to be based on speculation as to what potentially could be discovered. *Paddington Partners*, 34 F.3d at 1138. A court may also deny additional discovery if the non-moving party has had an adequate opportunity for discovery. *Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290-99 (1968)). While failure to comply with the third and fourth requirements is not automatically fatal to a Rule 56(f) affidavit, *Paddington Partners*, 34 F.3d at 1139, a district court is entitled to refuse additional discovery where the party's unfinished discovery is a result of its own dilatoriness. *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 925-926 (2d Cir. 1985).

Here, plaintiff's Rule 56(f) application must be denied because her unfinished discovery was

the result of her own inaction. In *Burlington*, the Second Circuit held that "[a] party who both fails to use the time available and takes no steps to seek more time until after a summary judgment motion has been filed need not be allowed more time for discovery absent a strong showing of need." *Id*. at 928. The court refused plaintiff's Rule 56(f) request because (1) plaintiff had had ample time for discovery; (2) defendant had previously informed plaintiff that it intended to move for summary judgment and; (3) plaintiff waited until filing its opposition to the summary judgment motion to indicate that discovery had been inadequate. *Id*. at 925-26.

Here, as in *Burlington*, plaintiff has had ample time for discovery, and she took no steps at the conclusion of the discovery period to indicate that it was inadequate. Plaintiff knew, at least as of August 18, 2005, that defendants intended to file a motion for summary judgment. This was well before the discovery period ended and the motion papers were served. Nonetheless, plaintiff waited until serving her opposition papers to indicate discovery was inadequate. At no time prior to submitting those papers did plaintiff object to the discovery schedules set by the court, file supplemental discovery requests, or seek to depose additional witnesses.

Plaintiff's counsel claims that the need to depose Mr. Jefferson only came to light on June 29, 2006, the date plaintiff received defendants' summary judgment motion. Boyd Aff. ¶¶ 13-14. However, plaintiff was well aware of Mr. Jefferson from the outset of the matter: she received her appeals correspondence from Mr. Jefferson, addressed her appeals letter to Mr. Jefferson, and referred to him three times in her EEOC Charge. Furthermore, plaintiff knew, as of April 18, 2006, that the witness she *had* deposed "could not address the matters of discriminatory animus most important to this case." Boyd Aff. ¶ 12. Nonetheless, she did not seek to depose Mr. Jefferson or any other witness prior to the submission of her opposition papers.

Plaintiff defends this inaction by claiming that "a specific court order prevented Jefferson's deposition from occurring, precipitating the issue at hand." Pl's Opp. at 9. The "specific court order" plaintiff refers to is Magistrate Judge Bloom's order of August 22, 2005 that defendants produce a witness for deposition pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. However, a Rule 30(b)(6) order does not forbid a plaintiff from deposing other witnesses. Fed. R. Civ. P. 30(b)(6), 1970 advisory committee note ("if the examining party believes that certain officials who have not testified pursuant to this subdivision have added information, he may depose them."). There is simply no reason plaintiff could not have deposed Mr. Jefferson.

Moreover, plaintiff offers no reason to believe that Mr. Jefferson's deposition would reveal anything different from what is in his declaration. In light of plaintiff's inaction and absent a strong showing of need, plaintiff's request for additional discovery pursuant to Rule 56(f) is denied.

### C. Summary Judgment

Alternatively, plaintiff argues that there is a factual issue concerning whether she was denied differential pay in retaliation for her opposition to unlawful employment practices or because of her disability.

### 1. Retaliation

Plaintiff's Title VII, NYSHRL, and NYCHRL claims of retaliation are to be evaluated using the same Title VII analysis. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 n. 1 (2d Cir. 2000). *See also Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006); *Knight v. City of New York*, 303 F. Supp. 2d 485, 495 (S.D.N.Y 2004). Retaliation claims under Title VII are analyzed under the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-803 (1973) and its progeny. *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d

166, 173 (2d Cir. 2005).

Under this burden-shifting framework, the plaintiff must first present sufficient evidence to establish a prima facie case. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). If the plaintiff can establish a prima facie case, the defendant must articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If the employer provides such a reason, the plaintiff must then prove that the allegedly legitimate reason is merely a pretext for discrimination. *Id.* "A reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) ("it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation."). At the summary judgment stage, this means that the plaintiff "must establish a genuine issue of material fact either through direct, statistical or circumstantial evidence as to whether the employer's reason for discharging her is false *and* as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision." *Gallo v. Prudential Residential Serv., Ltd. P'ship*, 22 F.3d 1219, 1225 (2d Cir. 1994).

Assuming here that plaintiff can meet the de minimis burden of proving a prima facie case, defendants have presented legitimate, non-discriminatory reasons for denying plaintiff differential pay.[3] In denying plaintiff's original application for differential pay, defendants cited three reasons:

---

[3]Defendants argue that plaintiff cannot establish a causal connection between her protected activity and the adverse action as is required to establish a prima facie case of retaliation under Title VII. *See Jute*, 420 F.3d at 173. While ordinarily the protected activity and adverse action must be much closer in time than what is alleged here, *see e.g. Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001), under the unusual circumstances of this case, the court declines to find as a

(1) she failed to report to the clinic as requested; (2) her illness was an aggravation of a pre-existing condition; and (3) the accident was reported late. In closing plaintiff's appeal, defendants stated that she failed to personally appear as required by their policy.

Plaintiff has failed to show any evidence that these proffered reasons for denying differential pay were a pretext for discrimination. First, plaintiff does not submit any evidence which shows that the reasons for denying her original differential application were inaccurate or illegitimate. In fact, plaintiff does not challenge the legitimacy of these reasons either in her EEOC complaint or in her papers opposing summary judgment. Second, plaintiff does not present sufficient evidence to create a genuine issue of fact as to whether the closing of her differential appeal was pretextual. Plaintiff relies predominantly on Ms. Holt's testimony that no one is ever denied an appeal to argue that defendants' proffered reason was a pretext. However, Ms. Holt's testimony is not inconsistent with the closing of plaintiff's appeal since plaintiff was not denied an appeal. There is no dispute that she was offered a hearing on her appeal, and the explicit opportunity to reschedule if necessary. However, plaintiff refused to appear, and the appeal was closed only after she failed to appear. Plaintiff cites no other evidence which illustrates that defendants' proffered reason for closing her appeal was false. Defendants submit evidence which shows that: (1) they have a policy requiring employees to personally appear for a hearing; (2) that plaintiff would not attend the scheduled hearing; and (3) that the appeal was closed after plaintiff refused to appear. Plaintiff also cites no evidence suggesting that Mr. Jefferson acted with retaliatory animus in closing her appeal. Plaintiff argues that, because Mr. Jefferson knew of plaintiff and her history with defendants prior to closing her appeal, she was denied an appeal based on retaliation. While the court accepts that Mr. Jefferson

---

matter of law that there could be no causal connection.

did know of plaintiff and her history after she filed her appeal, plaintiff cites no evidence which supports the conclusion she draws from this inference. Instead, plaintiff relies only on allegations of "suspicion." Boyd Aff. ¶ 7. In proving that plaintiff's legitimate reasons were a pretext for discrimination, a plaintiff cannot rely on conclusory allegations to avoid summary judgment. *See Smith v. Amer. Express Co.*, 853 F.2d 151, 155 (2d Cir. 1988). Thus, plaintiff cannot meet her burden of proving that she was denied differential pay based on retaliation. Consequently, defendants' motion for summary judgment on plaintiff's Title VII, NYSHRL, and NYCHRL retaliation claims is granted.

### 2. Disability

ADA employment discrimination claims are also subject to the burden-shifting framework of *McDonnell Douglas*. *See Sista v. CDC Ixis N. Amer., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006). Again, assuming that plaintiff can establish a prima facie case of disability discrimination, defendants provide the same legitimate non-discriminatory reasons for denying plaintiff differential pay, and plaintiff proffers the same insufficient evidence to establish that these reasons were pretextual. In fact, it is unclear whether plaintiff herself believed the real reason for denying her differential pay claim was because of disability discrimination. Plaintiff did not claim in her EEOC charge that she was discriminated against because of her disability, and she stated in letters to the EEOC that, "NYCT did not deny me differential pay because I am disabled," and "this charge is the result of **retaliation** on the part of my ex-employer and **not** disability." Ultimately, plaintiff's claim of disability discrimination rests on her statement that, "I believe I was denied [my right to an appeal]... perhaps, because of my disability." Zerilli Aff. ¶ 7. Since conclusory allegations are insufficient to avoid summary judgment, defendants' motion for summary judgment on plaintiff's

ADA claim is granted.[4]

## III. CONCLUSION

The defendants' motion for summary judgment is granted and the Clerk of Court is directed to enter judgment for defendants.

SO ORDERED.

 _/s/ Nina Gershon_
Nina Gershon, U.S.D.J.

Dated: Brooklyn, N.Y.
       August 1, 2007

---

[4]Although plaintiff alleged in her initial complaint in this court that defendants failed to accommodate her disability, she does not make such an allegation in her Second Amended Complaint. In any event, any failure to accommodate claim would fail given that plaintiff never requested an accommodation for her disability. *See Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184-185 (2d Cir. 2006) ("it is the responsibility of an individual with a disability to inform the employer that an accommodation is needed") (quoting 29 C.F.R. pt. 630 app. at 363 (2003)). Furthermore, defendants would have no reason to believe she could not attend the Problem Resolution Meeting given that she had been attending worker's compensation meetings regularly for six years.